Argued February 25, affirmed April 4, reconsideration denied May 11, petition for review allowed October 11, 1977

STATE OF OREGON, *Respondent,*
*v.*
WILLIAM JOEL FISH, *Appellant.*
(No. C-76-03-04368, CA 6918)

562 P2d 220

J. Marvin Kuhn, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Lee and Tanzer, Judges.

TANZER, J.

## TANZER, J.

Defendant was convicted of first degree burglary[1] and felony murder.[2] He received the maximum sentences of 20 years imprisonment for burglary and life imprisonment for murder, the terms to run consecutively.

On March 29, 1976, defendant entered the victim's residence by breaking a window. His admitted purpose in doing so was "to relieve the old lady of all of her jewels." During the course of the burglary, the victim apparently offered resistance and defendant assaulted her, causing her death. There was evidence that defendant is an alcoholic, that he had been drinking on the evening of the offense, and that, at the time of the break-in, his blood alcohol level was approximately .2 percent.

At trial, defendant maintained that, at the time he entered the victim's home, he was so intoxicated that he was incapable of forming the specific intent to commit a crime therein and thus he could not be guilty of burglary or felony murder.[3]

---

[1] ORS 164.225.

[2]
  "(1) * * * [C]riminal homicide constitutes murder when:
  "* * * * *

  "(b) It is committed by a person, acting either alone or with one or more persons, who commits or attempts to commit arson in the first degree, burglary in the first degree, escape in the first degree, kidnapping in the first degree, rape in the first degree, robbery in any degree or sodomy in the first degree and in the course of and in furtherance of the crime he is committing or attempting to commit, or the immediate flight therefrom, he, or another participant if there be any, causes the death of a person other than one of the participants.
  "* * * * *." ORS 163.115(1)(b).

[3] Evidence of intoxication was presented pursuant to ORS 161.125(1), which provides:
  "Drug use, dependence on drugs or voluntary intoxication shall not, as such, constitute a defense to a criminal charge, but in any prosecution for an offense, evidence that the defendant used drugs, or was dependent on drugs, or was intoxicated may be offered by the defendant whenever it is relevant to negative an element of the crime charged."

[ 17 ]

Defendant first assigns as error the trial court's refusal to give the following jury instruction:

"The defendant has offered evidence that he was intoxicated at the time of the crime and that tests were taken to determine the level of alcohol in his blood. In this type of case, there is no level of blood alcohol that establishes intoxication.

"However, for the purposes of comparison, and for only those purposes, I instruct you that for the purposes of driving a vehicle, there is a disputable presumption that a person is under the influence of intoxicating liquor if his blood alcohol level is .15% or more.

"A disputable presumption may be equalled or outweighed by other evidence. Unless equalled or outweighed by other evidence they must be accepted by you as true."[4]

Defendant relies upon *State v. Culley,* 25 Or App 387, 549 P2d 1130, *rev den* (1976), in which we observed in dicta that in determining whether a confession was involuntary due to intoxication, the presumptive level of being under the influence for

_____

[4]Former ORS 483.642, which was in effect at the time of defendant's trial, provided:

"(1) At the trial of any civil or criminal action, suit or proceeding arising out of the acts committed by a person driving a motor vehicle while under the influence of intoxicating liquor, the amount of alcohol in the person's blood at the time alleged as shown by chemical analysis of the person's breath, blood, urine or saliva shall give rise to the following presumptions:

"(a) Not more than .05 percent by weight of alcohol in his blood, supports a disputable presumption that he was not then under the influence of intoxicating liquor.

"(b) More than .05 percent but less than .10 percent by weight of alcohol in his blood, is indirect evidence that may be used to determine whether or not he was then under the influence of intoxicating liquor.

"(c) Not less than .10 percent by weight of alcohol in his blood, supports a disputable presumption that he was then under the influence of intoxicating liquor.

"* * * * *"

The requested instruction was inaccurate in that it indicated that a blood alcohol level of .15 percent was the presumptive level of intoxication for operation of a motor vehicle when, in fact, the presumptive level was .10 percent. Driving with a .15 percent blood alcohol content was a crime absolutely under former ORS 483.999. Effective July 1, 1976, former ORS 483.642 and 483.999 were repealed. 1975 Oregon Laws, ch 451, § 291.

driving purposes was entitled to some consideration, but was not controlling. 25 Or App at 389, n. 2. We are now persuaded that the statutory presumption is irrelevant except in cases involving automobiles to which it was made expressly applicable. Alcohol's effect upon mental and physical capacities may vary tremendously from individual to individual. Moreover, the degree of intoxication which impairs some functions may not impair others. Hutchison, et al., *A Study of The Effects of Alcohol on Mental Functions,* 7 Crim Law Quarterly 343, 358 (1964). The fact that the legislature made a particular blood-alcohol level presumptive of intoxication for driving purposes, *see Sofich v. Hill,* 277 Or 327, 560 P2d 633 (1977), has no bearing on the issue of whether defendant was too intoxicated to form a burglarious intent.[5] Therefore, defendant's requested instruction invites an inappropriate comparison. The trial court, having fully instructed the jury concerning the effect of defendant's voluntary intoxication, properly declined to give the requested instruction.

■ Defendant next contends that under the rule of *State v. Woolard,* 259 Or 232, 484 P2d 314, 485 P2d 1194 (1971), the trial court erred in sentencing him for both burglary and murder. *Woolard* and its progeny hold, based upon the Supreme Court's analysis of legislative intent, that a person who breaks and enters a building with the intent to commit a crime therein may not be convicted and sentenced for both burglary and the completed intended crime. 259 Or at 238. The rule is inapplicable to the facts of this case. The first count of the indictment charged defendant with unlawfully entering a building with the intent to commit theft therein. The jury was instructed that in order to convict on that count, they must find that at the time of entry, defendant intended to commit that specific offense. Thus, by convicting, the jury necessarily

---

[5] *Accord, People v. Roberts,* 51 Cal App 3d 125, 135, 123 Cal Rptr 893 (1975).

found that defendant's purpose upon entry was to commit theft. In contrast, there is no evidence that, at the time of entry, he intended to commit homicide or assault. Such intent was not charged and no instruction concerning it was given. As the Supreme Court noted in *State v. Woolard, supra,* 259 Or at 239:

> "* * * We do not intend to bar the conviction and sentence for some crime not intended at the time of breaking and entering but committed after the breaking and entering. Our decision is limited to circumstances involving the unique crime of burglary and is not intended to indicate an opinion on the wider subject of whether a defendant can be convicted and sentenced for two or more crimes of any nature committed during the same transaction or course of conduct."

■ *Woolard* would bar conviction and sentence of defendant for both burglary and theft. Because the burglary conviction was not based upon an intent to kill, however, the burglary and the homicide are distinct crimes and *Woolard* does not preclude consecutive sentences for each.

Affirmed.